### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

| | |
|---|---|
| RAWSON INC. <br> 2355 E. Nevada Ave. <br> Las Cruces, NM 88001 <br><br>        Plaintiff <br><br>        vs. <br><br> ASSOCIATED MATERIALS, LLC <br> 3773 State Road <br> Cuyahoga Falls, Ohio 44223 <br><br>      c/o CT Corporation System <br>      206 S. Coronado Ave. <br>      Espanola, NM 87532-2792 <br><br>        Defendant | CASE NO. <br><br><br> **COMPLAINT FOR DAMAGES** <br> **AND INJUNCTIVE RELIEF** <br><br> **Jury Demand Endorsed Hereon** |

Plaintiff Rawson Inc. d/b/a Rawson Builders Supply ("Rawson") brings this action against Defendant Associated Materials, LLC ("AML") and alleges as follows:

### NATURE OF THE CASE

1.      This is an action seeking damages and injunctive relief for price discrimination brought under the antitrust laws of the United States, namely the Robinson-Patman Act, 15 U.S.C. § 13 ("RPA"), and Section 4 of the Clayton Act, 15 U.S.C. § 15(a), which authorizes a private right of action for treble damages and attorneys' fees for antitrust violations; and the laws of the state of New Mexico, namely the New Mexico Price Discrimination Act (N.M. Stat. Ann. §§ 57-14-1 *et seq.*) ("NMPDA").  Specifically, AML charged Rawson, a building materials distributor, more for windows than it charged Rawson's competitors.

2.      This is also an action for breach of contract brought under a distribution agreement between Rawson and AML, as evidenced by a 2020/2021/2022 Distributor Partnership Agreement, entered into on or about January 6, 2021, as amended and renewed in January 2022; and 2023 Distributor Partnership Agreement, entered into on or about March 20, 2023 (collectively referred to herein as the "Agreement").  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

## PARTIES

3.      Rawson is a New Mexico corporation with its principal place of business at 2355 E. Nevada Ave., Las Cruces, New Mexico 88001.

4.      AML is a Delaware limited liability company with its principal place of business at 3773 State Road, Cuyahoga Falls, Ohio 44223.  AML is registered to transact business in New Mexico.

## JURISDICTION AND VENUE

5.      This court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6.      Venue is proper in this Court pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and AML is subject to personal jurisdiction in this Court.  AML contracted to sell goods to Rawson in New Mexico (under the Agreement that AML breached), sold goods to Rawson's competitors in New Mexico at discriminatory prices, and caused injury to Rawson in New Mexico by its acts or omissions in New Mexico.

2

7.      This Court has personal jurisdiction over AML because it is registered to do and in fact does transact business in New Mexico, contracted to sell goods to Rawson in New Mexico (under the Agreement that AML breached), and caused injury to Rawson in New Mexico by its acts or omissions in New Mexico.  Moreover, this Court has personal jurisdiction over AML because this complaint arises out of and relates to AML's contacts with and transaction of business in New Mexico.

## INTRODUCTION

### Statutory Background

8.      The RPA prohibits manufacturers or suppliers from charging higher prices to disfavored customers and lower prices to favored customers when those customers compete with each other.  In other words, the RPA prohibits price discrimination.

9.      The NMPDA is modeled on the RPA and also prohibits price discrimination.

10.     Both the RPA and NMPDA prohibit sellers (such as AML) from discriminating in price among different purchasers (such as Rawson and its competitors) of commodities of like grade and quality.

11.     Price discrimination is prohibited regardless of whether it is direct or indirect.  An example of indirect price discrimination is a difference in terms of sale, such as shipping and delivery terms, that result in the net price paid by a disfavored purchaser being higher than the price paid by a favored purchaser.

12.     The purpose of the prohibition on price discrimination in the RPA and NMPDA is to protect buyers, particularly family-owned small businesses like Rawson, from an unfair competitive advantage that could be obtained through special pricing.

**AML's Discriminatory Pricing**

13.     AML is a supplier of Alpine-brand windows, which it manufactures in Arizona and sells in interstate commerce, including to Rawson and other distributors in New Mexico and Texas. These distributors, in turn, resell the windows to customers such as homebuilders.

14.     AML has repeatedly sold Alpine windows to distributors in New Mexico and Texas in competition with Rawson at prices significantly lower than the prices charged to Rawson.

15.     Rawson competes directly with favored distributors in New Mexico and Texas for the sale of Alpine windows to homebuilders and other customers.

16.     Rawson also competes directly with AML-affiliated distributors in Texas that operate under the name Alside Supply Center ("Alside").  Alside Supply Centers have independent pricing authority.

17.     Rawson has lost millions of dollars in Alpine window sales as a result of AML's unlawful price discrimination.

**Harm to Competition**

18.     The antitrust laws generally protect competition and not individual competitors, but the RPA protects competition by protecting individual competitors—specifically, disfavored purchasers such as Rawson—from price discrimination.  Proof of harm to disfavored purchasers is sufficient to demonstrate harm to competition under the RPA.

19.     AML's price discrimination has caused harm to Rawson as a disfavored purchaser and thereby harmed competition.  *See FTC v. Morton Salt Co.*, 334 U.S. 37 (1948).

20.     In addition, competition in the market generally and downstream customers have been harmed by AML's unlawful price discrimination.  The prices charged by AML to Rawson

were necessarily passed on to Rawson's customers, and those customers paid more for the same products than they would have paid if AML had not discriminated against Rawson. Moreover, the prices charged to customers by favored purchasers—Rawson's competitors—were higher than they would have been if Rawson had been able to compete on fair terms and without being subject to unfair and discriminatory pricing by AML. Downstream customers, such as homebuilders, must necessarily have passed those increased costs on to home buyers as well.

21. Rawson is entitled to treble damages, attorneys' fees, restitution, and injunctive relief for harm caused by AML's unlawful price discrimination. *See* 15 U.S.C. § 15(a).

## FACTUAL ALLEGATIONS

### Rawson's Business and Relationship with AML

22. Rawson is a family-owned business and has been a distributor of construction materials and hardware in southwestern New Mexico (in and around Las Cruces) and western Texas (in and around El Paso) since 1973.

23. Rawson provides its customers, which include large homebuilders, with high-quality products, such as windows and doors, and related design and installation services.

24. One product that Rawson provides to customers is Alpine-brand windows.

25. Generally, Rawson pitches its business to homebuilders and then sells those customers windows (purchased from AML) along with related services.

26. Alpine windows are manufactured by AML in Arizona and sold and shipped in interstate commerce to Rawson and other distributors.

27. The Agreement between Rawson and AML states that AML "shall manufacture and sell" windows to Rawson in New Mexico and Texas.

28.     The Agreement also authorizes Rawson to re-sell windows purchased from AML in New Mexico and Texas.

29.     More specifically, the Agreement states as follows:

**GEOGRAPHY**
The scope of this Agreement includes the following Geography:

| New Mexico | Texas | |
|---|---|---|
| | | |

30.     Rawson maintained facilities and warehouses to conduct business, including accepting delivery of windows and other products, in New Mexico and Texas.

31.     Windows ordered under the Agreement were customarily shipped to Rawson warehouses near the location of the ultimate customer.  For example, if Rawson ordered windows to be sold to customers in Las Cruces, the windows would be shipped to Rawson's warehouse near Las Cruces.

32.     The cost of shipping to the Rawson warehouse location near the customer was imbedded in the price Rawson paid to AML.

33.     The Agreement also includes pricing, incentive, and rebate terms.  The incentive and rebate terms related to Rawson's marketing activities and services provided to customers.

34.     Rawson often pursued homebuilder customers by marketing Alpine windows and soliciting business through its own sales staff, which often coordinated efforts with AML's sales team but also pursued business opportunities independently in New Mexico and Texas.

35.     Historically, Rawson's window business focused on the Las Cruces, New Mexico and El Paso, Texas areas (the "Las Cruces/El Paso Market").

36.     Rawson also had significant business in the Midland/Odessa area of Texas.

6

37.     In or around 2020, Rawson sought to expand its window business (with the encouragement and initial support of AML) beyond the traditional Las Cruces/El Paso Market and beyond Midland/Odessa into larger markets in Texas, including Dallas, Fort Worth, Austin, and San Antonio.

38.     Rawson initially worked together with AML to pitch business to customers in Texas and had some success expanding into the larger Texas markets, such as Fort Worth.

39.     Eventually, however, AML started favoring other distributors in Texas, even after Rawson incurred significant effort and expense to develop relationships and set up facilities to store and sell Alpine windows in Texas.

40.     Working with AML, Rawson secured business in Austin and San Antonio but was thwarted when AML would not accept orders to be shipped to those locations.

**AML Discriminated Against Rawson by Selling to Favored Distributors at Lower Prices**

41.     AML sold the same products—Alpine windows—at lower prices to distributors in direct competition with Rawson in both New Mexico and Texas.

*New Mexico*

42.     In the El Paso/Las Cruces Market, Rawson competes with distributors for the sale of windows and related products and services to homebuilders.

43.     In August 2023, AML increased its Alpine window prices to Rawson by 15%, a significant increase not imposed on competing, favored distributors in New Mexico.

44.     On a continuous basis since that price increase, the favored distributors purchased Alpine windows from AML at prices lower than the prices at which Rawson purchased windows from AML.

45.     As a result of AML's discriminatory pricing in New Mexico, Rawson lost customers and significant business that was diverted to Rawson's competitors in New Mexico.

46.     For example, Rawson lost the business of Desert View Homes, a homebuilder, to All Seasons, a competing distributor of Rawson, because favorable pricing provided by AML to All Seasons but not to Rawson prevented Rawson from effectively competing on price.

47.     Similarly, Rawson lost the business of Hakes Brothers Homes, a homebuilder, to All Seasons because favorable pricing provided by AML to All Seasons but not to Rawson prevented Rawson from effectively competing on price.

48.     AML has told Rawson that AML imposed price increases on Rawson simply because it had the power to do so.

49.     AML also told Rawson that it increased prices to Rawson in order to reduce demand and suppress supply and output, which resulted in delayed delivery times and inability to fulfill orders and, in turn, increased prices in the downstream market.

### *Texas*

50.     Rawson intended to expand its Texas business by entering larger Texas markets outside El Paso and Midland/Odessa, such as Dallas, Fort Worth, Austin, and San Antonio.

51.     AML knew about Rawson's intentions and encouraged and assisted Rawson with setting up a distribution operation in Fort Worth in or around 2020.

52.     Rawson also expended resources and time to pitch for and win business in San Antonio and Austin, even working together with AML representatives to solicit business there.

53.     Despite this encouragement and the terms of the Agreement, which requires AML to sell windows to Rawson throughout Texas, AML refused to accept orders from Rawson for windows to be shipped to Austin and San Antonio in or around 2023 and has continued to do so.

54.     AML would only accept orders to ship windows ordered by Rawson to Fort Worth. Thus, Rawson purchased windows from AML that were shipped to Fort Worth.   To service customers in Austin and San Antonio, Rawson must ship windows by ground from Fort Worth, which is several hours away from Austin and San Antonio.

55.     At the same time, AML sold windows to Rawson's competitors (favored purchasers) and shipped the windows directly to locations in the Austin and San Antonio areas.

56.     Because AML would not ship windows to Austin and San Antonio for Rawson, Rawson's final delivered cost to those areas was significantly higher than the costs of its competitors and, accordingly, Rawson's prices offered to customers in those markets were higher than the prices offered by Rawson's favored competitors.  Rawson could not effectively compete because of AML's discriminatory treatment.

57.     This difference in shipping terms is, in effect, a significant price difference amounting to 15-20%.  As a result of this price discrimination, Rawson could not compete fairly in the Austin and San Antonio markets and lost significant business, customers, and profits.

58.     For example, one homebuilder customer in San Antonio (Coleman Homes) agreed to purchase windows from Rawson, but AML would not accept Rawson's order for shipment to San Antonio.  At the same time, AML shipped windows to favored distributors in San Antonio in direct competition with Rawson for that customer.  The favored distributors were thus able to offer lower prices than Rawson, resulting in the customer purchasing windows from a favored

competitor rather than Rawson. This favoritism to non-Rawson distributors amounted to price discrimination and also a breach of the Agreement.

59. As another example, a homebuilder customer in Austin (Richmond American Homes) desired to purchase windows from Austin, but AML again would not accept Rawson's order for shipment to Austin. At the same time, AML shipped windows to Austin for a different, favored distributor in direct competition with Rawson for that customer. Because AML would only ship to Fort Worth for Rawson, the favored distributor was able to offer lower prices than Rawson and the customer purchased the windows from the favored competitor instead of Rawson. This favoritism to non-Rawson distributors amounted to price discrimination and also a breach of the Agreement, which resulted in lost business and lost profits.

60. In effect, the additional shipping costs imposed on Rawson equated to a change in the pricing structure that had been in place for the duration of Rawson's relationship with AML, namely that the cost of windows included shipment of those windows to the locations where Rawson ordered them so that it could service customers there.

61. The additional shipping costs diminished Rawson's ability to compete against favored distributors in Austin and San Antonio.

62. Rawson could have competed effectively in Austin and San Antonio if not for AML's discriminatory shipment terms that favored Rawson's competitors.

63. AML's refusal to ship windows to Austin and San Antonio materially breached the Agreement.

64. In addition to favoring some independent distributors over Rawson, AML favored its own affiliated distributors, which operated under the name Alside Supply Center.

10

65.     AML sold Alpine windows to its affiliated Alside distributors in Texas at lower prices than it sold to Rawson, and Alside sold windows to customers at prices significantly lower than Rawson or other independent distributors could offer.

66.     AML does not consider Alside Supply Centers to be profit centers.

67.     AML does not control the pricing of the Alside Supply Centers, which have authority to set prices separately and independent from AML and are not subject to proper auditing or control by AML.

68.     Rawson lost significant business and customers in Texas because it could not compete with the predatory prices offered by Alside and favored treatment provided by AML to Alside.

### AML Materially Breached the Agreement

### *AML Refused to Sell Products to Rawson*

69.     Under the Agreement, AML was obligated to "manufacture and sell" windows to Rawson in New Mexico and Texas.

70.     Given that its territory under the Agreement included Texas, Rawson invested substantial time, effort, and expense to foster customer relationships there.  In particular, Rawson focused on expanding its presence in Dallas, Fort Worth, Austin, and San Antonio.

71.     Rawson had a reasonable expectation under the Agreement that AML would fulfill Rawson's orders for customers in Texas, including customers located in Dallas, Fort Worth, Austin, and San Antonio.

72.     Rawson worked diligently to secure business from several customers in Texas, including homebuilders in the Austin and San Antonio areas.

73.     Rawson also opened warehouse facilities in Texas in order to purchase windows and keep inventory in order to better service customers purchasing Alpine windows.

74.     AML knew that Rawson's business model involved purchasing windows and selling them from stock inventory, using additional purchases to complete window packages requested by customers.

75.     AML worked with Rawson to solicit business in Fort Worth, San Antonio, and Austin.

76.     Based on the Agreement and AML's conduct during the parties' dealings, Rawson reasonably expected that AML would sell and ship products to customers that Rawson successfully solicited in Texas.

77.     Despite Rawson's efforts and the Agreement, AML refused to provide pricing to Rawson for the sale of windows in Austin and San Antonio.  AML also refused to ship windows ordered by Rawson to Austin and San Antonio.  At the same time, AML shipped windows to other favored distributors in Austin and San Antonio.

78.     AML effectively prohibited Rawson from purchasing and reselling Alpine windows to customers in Austin and San Antonio by refusing to accept orders from Rawson and ship windows to the locations requested by Rawson.

79.     AML's refusal to sell and ship windows as ordered by Rawson in Texas constitutes a material breach of the Agreement and caused Rawson to lose annual profits totaling more than $5 million.

### *AML Failed to Provide Rebates to Rawson*

80.     Rawson is entitled to certain rebates and credits under the Agreement.

12

81.     Specifically, the Agreement called for annual rebates, a marketing allowance, a model home allowance, and a window service rebate.

82.     Rawson fulfilled all its obligations under the Agreement that were preconditions for receiving those contractual rebates and credits.

83.     Rawson purchased more than $5 million in windows from AML in 2021 and more than $7 million in windows from AML in 2022.

84.     All rebates were required to be credited by AML to Rawson's account within 45 days after the close of the relevant calendar period, but, beginning in 2019 and on a continuous basis afterward, AML's rebate payments to Rawson lagged significantly beyond the 45-day period.

85.     In many cases, AML did not and has not made the rebate payments or credited Rawson's account for the rebates.

86.     AML has not credited Rawson with approximately $119,803 in annual rebates for 2021.

87.     AML has not credited Rawson with approximately $147,337 in annual rebates for 2022.

88.     AML also failed to accurately credit Rawson's account for payments made, and Rawson spent considerable time correcting AML's accounting mistakes.  Through August 2022, AML failed to credit approximately $35,500 to Rawson's account.

89.     In total, AML has failed to pay or credit more than $300,000 in rebates and credits owed to Rawson under the Agreement.

***AML Failed to Fulfill Its Obligations under the Agreement***

90.     AML caused substantial ill will with customers in Texas that resulted in substantial lost business to Rawson.

91.     For example, AML's lead times for delivery of windows lagged beginning in or around 2021.  Prior to then, the lead time for an order made by Rawson to AML was about 2-3 weeks, but that lead time increased to six months.  These substantially increased lead times were wholly inconsistent with the parties' course of dealing over many years.  Rawson believes these lead times were caused by AML's intentional decision to favor its affiliated Alside distributors and independent distributors competing with Rawson.

92.     AML purposefully placed Rawson's orders behind orders from other distributors that had placed orders after Rawson.  This discriminatory treatment resulted in delays to Rawson's customers and, ultimately, lost business.

93.     AML made no good faith effort to deliver windows to Rawson on fair terms with other distributors.

94.     AML knew that Rawson's business model was to purchase windows, keep them in inventory, and sell from stock.  The business model required Rawson to keep windows in stock and then order additional windows to complete a package for an entire house, which is how homebuilder customers ordered windows.  It was that very business model that AML encouraged and helped Rawson set up in Texas.

95.     Rawson had a reasonable expectation that AML would sell windows to Rawson to support customers located throughout Texas.

96.     AML's conduct was inconsistent with Rawson's reasonable expectations under the Agreement, which were shaped by many years of dealing with AML.

97.     That course of dealing involved Rawson soliciting customers in New Mexico and Texas, ordering windows from AML to complete orders for those customers, and AML shipping windows to Rawson facilities located near customers.

98.     Given that the Agreement identified Texas as part of Rawson's territory and required AML to sell windows to Rawson in Texas, as well as the course of dealing through which AML shipped windows to Rawson facilities located near customers, AML's discriminatory refusal to ship Rawson windows to certain locations (e.g., Austin and San Antonio) violated the letter and spirit of the Agreement.

99.     AML also sold and delivered deficient windows to Rawson that were poorly manufactured, not matching the types of products that were ordered, and damaged.  For example, Rawson received windows with grids falling out and orders that included designs that were not what was ordered.  AML's manufacturing and delivery problems caused Rawson to lose at least one customer and left Rawson with approximately $150,000 in unusable window inventory.

100.    AML's conduct caused significant damages to Rawson, including lost business.  In one instance, Rawson lost what had been a loyal customer of twelve years because of AML's conduct, resulting in lost annual revenue of more than $2 million.

101.    Because of AML's conduct, Rawson could not realize the benefit of its bargain under the Agreement.

**FIRST CLAIM FOR RELIEF**
**Price Discrimination – Robinson-Patman Act – 15 U.S.C. § 13(a)**

102.    Rawson hereby incorporates all its prior allegations.

15

103.    AML engaged in price discrimination against Rawson by selling Alpine windows to favored purchasers—distributors in direct competition with Rawson in New Mexico and Texas—at net prices considerably lower than the prices charged to Rawson.  Rawson believes the prices charged by AML to Rawson for the same products are 12-20% higher than those charged by AML to Rawson's competing distributors.

104.    AML's price discrimination was not justified by any cost savings realized in conjunction with the sales to Rawson's competitors.

105.    AML discriminated against Rawson vis-à-vis other distributors by refusing to ship Alpine windows for Rawson to certain locations (specifically, Austin and San Antonio) while at the same time shipping to those locations for favored purchasers, effectively increasing the net price Rawson had to pay for windows to sell to customers in those locations.

106.    AML's price discrimination has substantially harmed competition between Rawson and its competitors, and Rawson has lost customers to its favored competitors because of AML's price discrimination.

107.    AML's price discrimination has caused economic harm to homebuilders who purchased windows from Rawson because they paid and continue to pay more than they would have paid if AML had not discriminated against Rawson.  In turn, AML's price discrimination harmed home buyers as well because they paid and continue to pay more for houses than they would have paid if AML had not discriminated against Rawson.

108.    Rawson has been damaged by AML's discrimination because it has lost customers to competing distributors, been unable to keep customers and attract new customers through price

competition, earned lower profits on existing sales, and sold fewer windows than it would have sold in the absence of AML's price discrimination.

109.    Rawson is entitled to treble damages and attorneys' fees because of AML's price discrimination. *See* 15 U.S.C. § 15(a).

## SECOND CLAIM FOR RELIEF
### Price Discrimination – New Mexico Price Discrimination Act (N.M. Stat. Ann. § 57-14-3)

110.    Rawson hereby incorporates all its prior allegations.

111.    AML engaged in price discrimination against Rawson by selling windows to favored purchasers—distributors in direct competition with Rawson—at net prices considerably lower than the prices charged to Rawson.

112.    Upon information and belief, prices charged by AML to Rawson for the same products are 12-20% higher than those charged by AML to Rawson's competing distributors.

113.    AML's price discrimination was not justified by any cost savings realized in conjunction with the sales to Rawson's competitors.

114.    AML's price discrimination has substantially harmed competition between Rawson and its competitors, and Rawson has lost customers to its competitors because of AML's price discrimination.

115.    AML engaged in intentional price discrimination for the purpose of eliminating Rawson as a competitor.

116.    AML's price discrimination has caused economic harm to homebuilders who purchased windows from Rawson because they paid and continue to pay more than they would have paid if AML had not discriminated against Rawson.  In turn, AML's price discrimination harmed home buyers as well because they paid and continue to pay more for houses than they

would have paid if AML had not discriminated against Rawson.

117.     Rawson has been damaged by AML's discrimination because it has lost customers to competing distributors by virtue of Rawson's inability to keep customers and attract new customers through price competition, by virtue of lower profits on existing sales, and by selling fewer windows than it would have sold in the absence of AML's price discrimination.

### THIRD CLAIM FOR RELIEF
**Breach of Contract**

118.     Rawson hereby incorporates all its prior allegations.

119.     The Agreement is a valid and enforceable contract, supported by adequate consideration.

120.     Rawson has performed all its obligations under the Agreement.

121.     Under the Agreement, AML was obligated to sell windows to Rawson in New Mexico and Texas.

122.     AML has refused to accept orders from Rawson for products covered by the Agreement; to wit, AML refused to sell and ship Alpine windows to Austin and San Antonio.

123.     Rawson solicited customers in Austin and San Antonio and wanted to order windows to be shipped to those locations, but AML refused to ship windows to Austin and San Antonio for Rawson.

124.     AML failed to provide rebates and credits owed to Rawson under the Agreement.

125.     AML's refusal and failure to fill orders, ship windows to certain locations, and provide credits and rebates constitute material breaches of the Agreement.

126.     AML sold and delivered windows to Rawson that were deficient, incorrect, and damaged.

127.    Rawson has been damaged by AML's material breaches of the Agreement.

128.    As a result of AML's breach of the Agreement, Rawson has suffered and will continue to suffer damages and irreparable harm for which it has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

129.    Rawson hereby incorporate all its prior allegations.

130.    The Agreement is a valid and enforceable contract, supported by adequate consideration.

131.    As with all contracts, the law implies a covenant of good faith and fair dealing in the Agreement.

132.    AML breached the implied covenant of good faith and fair dealing by refusing to accept orders for delivery to Austin and San Antonio, purposefully delaying delivery of products, and imposing unjustified and discriminatory price increases and shipping terms.

133.    AML's conduct violated the spirit of the Agreement and the parties' reasonable expectations under the Agreement.

134.    Rawson had a reasonable expectation that AML would sell Alpine windows to Rawson for resale in Texas when Rawson successfully solicited business from customers, but AML discriminated against Rawson vis-à-vis other distributors by refusing to ship windows for Rawson to certain locations in Texas, thereby increasing the net price Rawson had to pay for Alpine windows and effectively precluding Rawson from competing in certain areas, especially Austin and San Antonio.

135.    Rawson also had a reasonable expectation that AML would treat Rawson's orders on equal terms with orders from other distributors, but AML purposefully and unfairly delayed Rawson's orders to favor other competing distributors.

136.    As a result of AML's breach of the implied covenant of good faith and fair dealing, Rawson has suffered and will continue to suffer damages and irreparable harm for which it has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Rawson hereby requests that this Court enter a judgment in its favor and against AML as follows:

A.    for judgment against AML;

B.    for compensatory and treble damages;

C.    for permanent injunctive relief enjoining AML from discriminating against Rawson by selling to favored purchasers at lower prices;

D.    for attorneys' fees;

E.    for costs; and

F.    for such other and further relief as the Court deems just and proper.

*< Signature on Following Page >*

Respectfully submitted,

Dated: October 7, 2024

*/s/ Kathryn Brack Morrow*
Kathryn Brack Morrow
Mann Morrow, PLLC
665 E. University Ave., Suite C
Las Cruces, NM 88005
Phone: 575-440-0300
Katy.Morrow@MannMorrow.com

Thomas F. Zych (0019942) (*pro hac vice* forthcoming)
Tom.Zych@ThompsonHine.com
Mark R. Butscha, Jr. (0088854) (*pro hac vice* forthcoming)
Mark.Butscha@ThompsonHine.com
Caitlin R. Thomas (0093847) (*pro hac vice* forthcoming)
Caitlin.Thomas@ThompsonHine.com
Gabriel D. Kaufman (103747) (*pro hac vice* forthcoming)
Gabriel.Kaufman@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone: 216-566-5500
Fax: 216-566-5800

*Attorneys for Plaintiff Rawson Inc.*

## **Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Rawson Inc. hereby demands trial by jury on all issues so triable.

*/s/ Kathryn Brack Morrow*
*One of the Attorneys for Plaintiff Rawson Inc.*