IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAWSON INC.

       **Plaintiff,**

v.                                       **No. 2:24-cv-01012-JHR-KRS**

ASSOCIATED MATERIALS, LLC,

       **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING ASSOCIATED
MATERIALS' MOTION TO TRANSFER VENUE [DOC. 22].**

THIS MATTER is before the Court on Defendant Associated Materials, LLC's Motion to Transfer Venue [Doc. 22]. The parties consented to U.S. Magistrate Judge Jerry H. Ritter presiding over dispositive proceedings and motions in this matter pursuant to 28 U.S.C. § 636(c) and Rule 73(b). [Docs. 28, 30, and 31, text only]. Having considered the briefing, the record, and the relevant law, the Court DENIES the motion to transfer venue.

## I.      BACKGROUND

### A. Rawson's Complaint [Doc. 1].

The allegations in the complaint stem from building materials supplier Associated Materials allegedly charging distributor Rawson higher prices for windows than it charged Rawson's competitors. [Doc. 1, at 1]. Rawson has historically distributed construction materials such as doors and windows to large-scale homebuilders and other customers primarily in southern New Mexico and west Texas. *Id.* at 5. One such product is the Alpine brand of windows manufactured by Associated Materials. *Id.*

In 2020, Rawson decided to expand its customer base for Alpine windows into larger Texas markets such as Dallas, Austin, and San Antonio. *Id.* at 6, 7. Associated Materials initially

supported Rawson's Texas expansion, but Rawson alleges Associated Materials then "started favoring other distributors in Texas, even after Rawson incurred significant effort and expense to develop relationships and set up facilities to store and sell Alpine windows in Texas." *Id.* at 7. This resulted in Rawson's new Austin and San Antonio business being "thwarted when [Associated Materials] would not accept orders to be shipped to those locations" and sold Alpine windows at a lower price to Rawson's competitors. *Id.* Consequently, Rawson incurred higher costs by having to cover shipping windows from its Fort Worth location to Austin and San Antonio. *Id.* at 9. Rawson's prices in those markets were thus higher than their competitors, against whom Rawson "could not effectively compete because of [Associated Materials'] discriminatory treatment." *Id.* at 9.

Rawson alleges Associated Materials discriminated against it in the New Mexico as well. In 2023, Associated Materials raised the price of Alpine windows by 15% for Rawson in New Mexico but did not impose the same price hike on other distributors. *Id.* at 7. Rawson says it has since paid more for Alpine windows than its competitors and lost "significant business that was diverted to Rawson's competitors in New Mexico." *Id.* at 8. It asserts Associated Materials raised these prices "simply because it had the power to do so" and to eventually increase prices in the downstream market. *Id.* at 8.

Rawson asserts that Associated Materials' conduct breached the parties' distributor partnership agreement [Doc. 1-1] whereby Associated Materials sold windows to Rawson for resale to Rawson's Texas and New Mexico customers. Rawson says that it "reasonably expected [Associated Materials] would ship and sell products to customers" in Texas based on the distribution agreement and the parties' past dealings. *Id.* at 12. Associated Materials' alleged refusal to do so while continuing to service other distributors was therefore a material breach

resulting in lost profits exceeding $5 million. *Id.* Second, Associated Materials' breached the agreement when it failed to provide various contractually obligated rebates and allowances. *Id.* at 12, 13. Rawson says it is owed more than $300,00 in rebates and credits. *Id.* Third, Associated Materials' allegedly failed to fulfill basic obligations under the agreement:  delaying fulfillment for windows which "purposefully placed Rawson's orders behind orders from other distributors." refusing to deliver windows to Austin and San Antonio, and delivering damaged windows. *Id.* at 14-15. Rawson contends these breaches caused it to lose regular customers and millions of dollars. *Id.* at 15.

Due to these alleged material breaches, Rawson filed a complaint in this Court on October 7, 2024, asserting claims for (1) price discrimination under the Robinson-Patman Act, 15 U.S.C. § 13(a), (2) price discrimination under the New Mexico Price Discrimination Act, N.M. Stat. Ann. § 57-14-3, (3) breach of contract, and (4) breach of the implied covenant of good faith and fair dealing. *Id.* at 15-19. Rawson contends that both the federal and state price discrimination acts apply to prohibit sellers, like Associated Materials, from directly or indirectly charging different prices among different purchasers, like Rawson and its competitors, for similar goods. *Id.* at 3. Rawson attached to its complaint the 2020/2021/2022 Distributor Partnership Agreement, an Amendment thereto, and the 2023 Distributor Partnership Agreement. [Doc. 1-1].

Associated Materials filed a motion to dismiss and a motion to transfer venue on January 31, 2025, in lieu of filing an answer [Docs. 22, 23].  After completion of briefing on those motions, [Docs. 33, 35], Rawson filed a motion to strike, the supplemental affidavit attached to Associated Materials' reply, or alternatively motion for leave to file a sur-reply. [Doc. 36]. Associated Materials filed a response. [Doc. 37].

**B. Briefing**

1. <u>Associated Materials' Motion to Transfer Venue [Doc. 22].</u>

Associated Materials argues that Rawson filed the instant lawsuit in New Mexico "in defiance of a valid and enforceable venue selection clause requiring that this action be filed in Delaware." [Doc. 22, at 1]. Associated Materials contends Rawson consented "on multiple occasions" to this clause and asks the Court to enforce it because Rawson cannot show extraordinary circumstances to keep the matter in New Mexico. *Id.* Associated Materials thus requests the matter be transferred to the District of Delaware. *Id.*

Associated Materials says the distribution agreement incorporates the forum selection clause by referencing the terms and conditions on its website. *Id.* at 2. The distribution agreement states that Associated Material's "standard Invoice Terms and conditions, available at http://www.associatedmaterials.com (the 'Invoice Terms'), which are hereby incorporated herein by reference, shall apply to all sales hereunder." *Id.* The invoice terms on the website contain the forum selection clause itself:

> THESE TERMS AND ANY SALE OF PRODUCTS HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO CONFLICTS OF LAWS RULES. **ANY LITIGATION WILL BE BROUGHT EXCLUSIVELY IN THE FEDERAL AND STATE COURTS OF THE STATE OF DELAWARE, AND BUYER SUBMITS TO THE JURISDICTION THEREOF AND WAIVES THE RIGHT TO CHALLENGE VENUE.** BUYER FURTHER CONSENTS TO THE EXERCISE OF PERSONAL JURISDICTION BY ANY SUCH COURT WITH RESPECT TO ANY SUCH PROCEEDING.

*Id.* (bolding emphasis added in brief). Associated Materials contends Rawson agreed to this clause each time it signed the distribution agreement on three separate occasions. *Id.* at n.1.

Associated Materials first argues that transfer to the District of Delaware is required because the forum selection clause contains mandatory language. *Id.*  at 4. The term "exclusively"

in the clause demonstrates "clear language showing that jurisdiction is appropriate" only in the designated forum of Delaware. *Id.* Thus, the phrases "litigation will be brought exclusively" in Delaware and the buyer "waives the right to challenge venue" preclude any argument that the clause is permissive. *Id.* (citing *K & V Scientific v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002)).

Second, Associated Materials asserts that all Rawson's claims fall within the scope of the forum selection clause. *Id.* at 5. Associated Materials points to the Invoice Terms and Conditions encompassing "all sales, quotations and offers made by, and purchase orders accepted by" Associated Materials. *Id.* Combined with the clause's language that "any litigation will be brought exclusively" in Delaware, Associated Materials contends the forum selection clause governs all claims "as they each arise from sales by Associated Materials to [Rawson] pursuant to their contractual relationship." *Id.* Even if not strictly contract claims, such as the price discrimination and breach of good faith and fair dealing claims, it urges the same principle applies because any claim still "grow[s] out of the contractual relationship" with Rawson. *Id.* at 6.

Finally, Associated Materials says no public interest factors disfavor transferring the case to Delaware. *Id.* at 6. Associated Materials explains that a § 1404(a) motion to transfer necessitates transferring per a valid forum selection clause "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* In that event, the "public-interest factors" take precedent: (1) the interest of administrative difficulties from court congestion, (2) the interest of having local controversies decided locally, and (3) the interest in trying a diversity case in the forum of the applicable law. *Id.* at 6, 7 (citation omitted). Associated Materials discusses each factor to advance why the public interest factors favor transferring the case to Delaware. *Id.* at 7, 8. Then Associated Materials concludes Rawson simply wants to "have its cake and eat it

too—sue [Associated Materials] under the terms of the Agreement attached to its Complaint, but also ignore other parts . . . namely the mandatory forum selection clause." *Id.* at 8, 9.

      2.  <u>Rawson's Response [Doc. 26].</u>

Rawson's response argues that the forum selection clause was not properly incorporated into the distribution agreement and must be disregarded. [Doc. 26, at 1]. Because the clause was only accessible through searching various page on Associate Materials' website, Rawson urges that it is unenforceable. *Id.* at 2. Rawson also emphasizes the lack of argument that New Mexico is an improper venue absent the forum selection clause. *Id.* at 1, 2.

To support its argument, Rawson explains the involved process of accessing the forum selection clause through Associated Materials' website:

> To review the Invoice Terms, Rawson would have needed to visit [Associated Materials'] website. The referenced website link is to [Associated Materials'] website home page, not to any terms and conditions. In order to then find the Invoice Terms, Rawson would have had to select "Tools" from the website menu, which takes the user to a different landing page that includes several links to resources, including one to "Terms and Conditions." *See Tools*, ASSOCIATED MATERIALS, https://www.associatedmaterials.com/tools/ (last visited Feb. 11, 2025). That link lands on a new page that lists *seven* sets of terms and conditions. *See Terms and Conditions*, ASSOCIATED MATERIALS, https://www.associatedmaterials.com/terms/ (last visited Feb. 11. 2025). None of the listed terms and conditions are labeled "Invoice Terms and Conditions." *Id.* To determine which terms and conditions are the Invoice Terms that are purportedly incorporated in the Agreement, Rawson would have had to open some, if not all, or the seven listed terms and conditions. *Id.* However, none of the hyperlinked documents are actually titled "Invoice Terms and Conditions." *Id.*

*Id.* at 2, 3.

Rawson thus contends the forum selection clause is invalid because the invoice terms were not properly incorporated into the distribution agreement. *Id.* at 5 (collecting cases). The agreement's numerous terms (including the forum selection clause) were not clearly and unequivocally referenced on the face of the distribution agreement such that Rawson readily knew about them. *Id.* Because Rawson "would have had to navigate through three separate pages on

[Associated Materials'] website to reach" the invoice terms, Rawson maintains the forum selection clause does not meet the standard for being integrated into the distribution agreement. *Id.* at 5, 6.

Rawson further argues that the forum selection clause is unenforceable as illusory because the invoice terms allow Associated Materials to unilaterally alter them without consulting Rawson. *Id.* at 3 (allowing Associated Materials to "revise, amend, modify, alter, or supplement these Terms" by publishing the changes on its website "at any time"). Rawson says such a one-sided revision in fact affected the forum selection clause during the parties' 2023 distribution agreement, which Associated Materials changed to state that "any litigation was to be brought in Summit County, Ohio" rather than Delaware. *Id.* This renders the clause invalid as well, Rawson urges.

Third, Rawson argues the forum selection clause fails because it is ambiguous. *Id.* at 8. Rawson explains "[t]he parties did not negotiate the forum selection clause, and the Invoice Terms were not attached to the Agreement either time the Agreement was executed," nor was it specified "whether the Invoice Terms in effect on the day the Agreement was entered remain the operable terms during the terms of the Agreement." *Id.* Further, Rawson contends the conflicting forums between in the original and modified agreements—Delaware and Ohio—create ambiguity making the clause inapplicable to the agreement. *Id.* at 8, 9 (collecting cases).

Rawson thus concludes that venue is proper in the District of New Mexico absent an enforceable forum selection clause.

## II.    <u>ANALYSIS</u>

Before analyzing whether transfer is proper under the forum selection clause, the Court must determine whether the forum selection clause was properly incorporated into the distribution agreements. To do this, the Court must first assess which state's contract law applies. For the below

reasons, the Court finds the forum selection clause was not properly incorporated into the distribution agreements under New Mexico law.

### A. Choice of Law Principles Dictate That New Mexico Contract Law Controls.

#### 1. Applicable Law.

Determining whether a forum selection clause is part of a contract is a legal question turning on state law of contract interpretation. *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 497 (10th Cir. 2002). A federal court sitting in diversity applies the choice of law rules of the forum state. *Carl Kelley Const. LLC v. Danco Techs*., 656 F. Supp. 2d 1323, 1337 (D.N.M. 2009). Because this Court sits in New Mexico, it will apply New Mexico's conflict of law rules to decide which state's substantive contract law governs the underlying incorporation by reference question. *Id.*

In disputes over the meaning and validity of contracts, "New Mexico generally follows the doctrine of *lex loci contractus*—the law of the place of contracting controls." *Id.*; *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217–18 (10th Cir. 1992). This "*lex loci contractus* [] rule holds that a contract is governed in the place where the last act necessary for its consummation is formed . . . which is often the place where the last signature is affixed to the contract." *Sarkar v. Hartford Ins. Co. of the Midwest*, No. CV 12-0861, 2013 WL 12085168, at *1 (D.N.M. July 12, 2013) (internal citation omitted); *see State Farm Mut. Ins. Co. v. Conyers*, 1989-NMSC-071 ("[T]he last act necessary for an agreement's formation is accomplished when a party to a contract places the last signature on the contract"). Although courts have identified certain problems with the inflexibility of this approach, *lex loci contractus* continues to be the governing rule. *See City of Raton v. Arkansas River Power Auth.*, 760 F. Supp. 2d 1132, 1151 (D.N.M. 2009).

#### 2. Application.

Applying *lex loci contractus*, the Court finds New Mexico contract law should apply to determine whether the forum selection clause is part of the distribution agreement. Although the invoice terms endorse Delaware law as governing all terms and sales, that provision is part of the same paragraph as the forum selection clause endorsing Delaware as the proper forum. *See* [Doc. 22-1, at 4]. Because Rawson argues the invoice terms and conditions were not properly incorporated in the distribution agreements, it would be logically inconsistent for the Court find the governing law part applies but not the forum selection part in the very same paragraph (neither of which appear on the face of the distribution agreements). Thus, the Court looks to the 2020/2021/2022 Distribution Partnership Agreement ("Original Agreement"), the Amendment to the 2020/2021/2022 Distributor Partnership Agreement ("Amendment"), and 2023 Distributor Partnership Agreement ("2023 Agreement") to answer the *lex loci contractus* question. *See* [Doc. 1-1].

The parties do not dispute the validity of any agreement as a standalone document—just the incorporation status of the invoice terms and conditions—so the Court will examine the signatures affixed to all the agreements. The Original Agreement from Associated Materials to Rawson contains the signature of Leonard Lee Rawson under "Customer Name: Rawson Builders Supply" and the signature of Gary Hartfield under "Accepted by: Associated Materials, LLC dba Alside." [Doc. 1-1, at 4]. Both signatures are dated January 7, 2021. *Id.* Thus, the Original Agreement does not shed light on which signature finally consummated the agreement and therefore governs the place of contracting. The Amendment from Associated Materials was only signed by Leonard Lee Rawson on January 19, 2022. *Id.* at 5. The signature line for Associated Materials' representative Craig Baily is blank—in other words, nobody signed the Amendment for Associated Materials. *Id.* The same is true for the 2023 Agreement. *Id.* at 6-8. The 2023 Agreement

from Associated Materials to Rawson is dated March 20, 2023, which is the same day Leonard Lee Rawson signed it. *Id.* But, as with the Amendment, the signature line under "Accepted By: Associated Materials dba Alside" is blank. *Id.* at 8.

Taken together, these documents indicate that Leonard Rawson's signature was the last signature necessary to officiate the agreements and that he signed at his place of business, 2355 Nevada Ave., Las Cruces, NM 88001. *Id.* at 2, 4, 5, 6. The lack of signature from Associated Materials on the Amendment and 2023 Agreement is presumably immaterial to their validity because no challenge is made on that basis. Associated Materials urges enforcement of all agreements along with incorporated terms. Therefore, the Court finds Rawson's signature shows New Mexico is the *lex loci contractus* and so New Mexico law will apply to the contract incorporation question.

### B. The Forum Selection Clause Is Invalid Under New Mexico Contract Law.

#### 1. Applicable Law.

The New Mexico Court of Appeals recently clarified the requirements to effectively incorporate outside documents by reference into a contract as a matter of first impression. *Szantho v. Casa Maria of New Mexico*, LLC, No. A-1-CA-41167, 2025 WL 1621680, at *3 (N.M. Ct. App. June 5, 2025). The court found two requirements must be met for valid incorporation: "[f]irst, the contract must make a clear reference to the document and describe it in such terms that its identity may be ascertained beyond doubt" and "[s]econd, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.* (internal quotation and citation omitted). It reasoned that "[a] reference to another document must be clear and unequivocal and incorporation by reference is ineffective to accomplish its intended purpose when the provisions to which reference is made do not have a reasonably clear and ascertainable meaning." *Id.*

In *Szantho*, the Court of Appeals applied these rules to find that a nursing home readmission agreement did not properly incorporate an arbitration provision from the original admission agreement. *Id.* The readmission agreement contained a paragraph stating, "[t]he terms, conditions, and obligations of the parties as stated in the original Admission Agreement, along with each of its attachments, are incorporated in this Readmission Agreement by reference thereto and shall be effective as if rewritten fully herein." *Id.* at *4. The readmission agreement also listed specific documents for which the signor acknowledged receipt, including the admission handbook outlining several facility policies (such as funding, reservations, and grievances) and lists of residents' state law rights, advance directives, onsite medical providers, and advocacy groups. *Id.* Notably, the readmission agreement did not mention the arbitration provision, an omission the court found "striking" because the agreement "otherwise expressly identifies a number of other documents." *Id.*

The Court of Appeals rejected the defendants' argument that the "Readmission Agreement sufficiently incorporated the Arbitration Agreement by expressly incorporating the original Admission Agreement, along with each of its attachments." *Id.* The general reference to "attachments" fell short of incorporating documents outside the actual Admission Agreement:

> There is nothing in the record that purports to identify, clearly and unequivocally, what the "attachments" are, much less that the Arbitration Agreement is one of them. As we have discussed, the only documents identified as having been received by [the resident] appear in paragraph five of the Readmission Agreement, and the Arbitration Agreement is not included among them. Put differently, there is nothing that would provide [the resident] with a reasonably clear and ascertainable meaning of what documents are "attachments."

*Id.* at *5. The Court of Appeals therefore affirmed the district court's denial of mandatory arbitration and held that merely referencing "attachments" was not clear enough to effectively incorporate "whatever unidentified documents were, in fact, attached." *Id.*

    2.  <u>Application.</u>

The Court finds the *Szantho* holding dictates a similar outcome in this case. Namely, the reference to "standard invoice terms and conditions" which purportedly incorporates the forum selection clause by reference into the distribution agreements is not sufficiently clear to validly incorporate that clause.

The facts here fail both elements of the *Szantho* test. First, the distribution agreements do not clearly reference and describe the invoice terms and conditions to make them understandable beyond doubt. *See Szantho*, 2025 WL 1621680, at *3. The forum selection clause from the website's terms and conditions is conspicuously absent from the face of the agreements. *See* [Doc. 1-1]. However, Associated Materials chose to include the entire "Force Majeure" clause from the invoice terms and conditions, *see* [Doc. 22-1, at 4], directly above the general "Additional Terms and Conditions" provision in the distribution agreements. *See id.* at 4, 7, 8. The choice to include the Force Majeure clause but omit the key forum selection clause—or any reference to it—from the distribution agreements indicates Associated Materials could have made the forum selection clause "ascertainable beyond doubt" but chose to forego doing so. *See Szantho*, 2025 WL 1621680, at *3. The distribution agreements otherwise lack any description of the website's invoice terms and conditions generally or forum selection clause specifically.

Nor is the second element met: it is unclear whether Rawson had knowledge of and assented to the invoice terms and conditions, particularly the forum selection clause. *See id.* Rawson's signature at the bottom of the distribution agreements (discussed above) can reasonably be construed to mean he knew and assented to the particular terms and conditions outlined in the agreements themselves: the "Force Majeure," "Term/Termination" and "Window Service Rebate" clauses. [Doc. 1-1, at 4, 7, 8]. By contrast, the general reference to "Additional Terms and Conditions" assigns no reasonably clear nor ascertainable meaning to those terms.

The Court has further reservations that Rawson knew and assented to the invoice terms and conditions because he did not initial in the blank after the final sentence of the "Additional Terms and Conditions" provision, which stated "[t]his Agreement, together with the Invoice Terms and any confidentiality agreement between the parties, constitutes the entire written agreement." *Id.* at 4, 8. Associated Materials' presumably chose to include an initial line at the end of the "Additional Terms and Conditions" provision to afford it protection from this type of incorporation by reference challenge. Thus, without Rawson's acknowledgement by initials, the Court cannot find that Rawson knew and assented to the invoice terms and conditions, including the forum selection clause, constituting part of the entire agreement.

For these reasons, the Court finds that the general reference to "invoice terms and conditions" in the distribution agreements does not effectively incorporate the specific website terms and conditions into the distribution agreements. Therefore, the Court finds the forum selection clause is not properly part of the distribution agreements and declines to transfer the case to Delaware.

### III.    CONCLUSION

**IT IS THEREFORE ORDERED** that Associated Material's Motion to Transfer Venue [Doc. 22] is hereby **DENIED**.

**IT IS SO ORDERED.**

Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent