IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAWSON INC.

      **Plaintiff,**

v.                                                                                         No. 2:24-cv-01012-JHR-KRS

ASSOCIATED MATERIALS, LLC,

      **Defendant.**

### MEMORANDUM OPINION AND ORDER DENYING ASSOCIATED MATERIALS' MOTION TO DISMISS [DOC. 21].

THIS MATTER is before the Court on Defendant Associated Materials, LLC's Motion to Dismiss [Doc. 21]. The parties consented to U.S. Magistrate Judge Jerry H. Ritter presiding over dispositive proceedings and motions in this matter pursuant to 28 U.S.C. § 636(c) and Rule 73(b). [Docs. 28, 30, and 31, text only]. Having considered the briefing, the record, and the relevant law, the Court DENIES the motion to dismiss.

### I.     BACKGROUND

**A. Rawson's Complaint [Doc. 1].**

The allegations in the complaint stem from building materials supplier Associated Materials allegedly charging distributor Rawson higher prices for windows than it charged Rawson's competitors. [Doc. 1, at 1]. Rawson has historically distributed construction materials such as doors and windows to large-scale homebuilders and other customers primarily in southern New Mexico and west Texas. *Id.* at 5. One such product is the Alpine brand of windows manufactured by Associated Materials. *Id.*

In 2020, Rawson decided to expand its customer base for Alpine windows into larger Texas markets such as Dallas, Austin, and San Antonio. *Id.* at 6, 7. Associated Materials initially supported Rawson's Texas expansion, but Rawson alleges Associated Materials then "started

favoring other distributors in Texas, even after Rawson incurred significant effort and expense to develop relationships and set up facilities to store and sell Alpine windows in Texas." *Id.* at 7. This resulted in Rawson's new Austin and San Antonio business being "thwarted when [Associated Materials] would not accept orders to be shipped to those locations" and sold Alpine windows at a lower price to Rawson's competitors. *Id.* Consequently, Rawson incurred higher costs by having to cover shipping windows from its Fort Worth location to Austin and San Antonio. *Id.* at 9. Rawson's prices in those markets were thus higher than their competitors, against whom Rawson "could not effectively compete because of [Associated Materials'] discriminatory treatment." *Id.* at 9.

Rawson alleges Associated Materials discriminated against it in the New Mexico as well. In 2023, Associated Materials raised the price of Alpine windows by 15% for Rawson in New Mexico but did not impose the same price hike on other distributors. *Id.* at 7. Rawson says it has since paid more for Alpine windows than its competitors and lost "significant business that was diverted to Rawson's competitors in New Mexico." *Id.* at 8. It asserts Associated Materials raised these prices "simply because it had the power to do so" and to eventually increase prices in the downstream market. *Id.* at 8.

Rawson asserts that Associated Materials' conduct breached the parties' distributor partnership agreement [Doc. 1-1] whereby Associated Materials sold windows to Rawson for resale to Rawson's Texas and New Mexico customers. Rawson says that it "reasonably expected [Associated Materials] would ship and sell products to customers" in Texas based on the distribution agreement and the parties' past dealings. *Id.* at 12. Associated Materials' alleged refusal to do so while continuing to service other distributors resulted in lost profits exceeding $5 million. *Id.* Second, Associated Materials' breached the agreement when it failed to provide

2

various contractually obligated rebates and allowances. *Id.* at 12, 13. Rawson says it is owed more than $300,00 in rebates and credits. *Id.* Third, Associated Materials' allegedly failed to fulfill basic obligations under the agreement: delaying fulfillment for windows which "purposefully placed Rawson's orders behind orders from other distributors." refusing to deliver windows to Austin and San Antonio, and delivering damaged windows. *Id.* at 14-15. Rawson contends these breaches caused it to lose regular customers and millions of dollars. *Id.* at 15.

Due to these alleged material breaches, Rawson filed a complaint in this Court on October 7, 2024, asserting claims for (1) price discrimination under the Robinson-Patman Act, 15 U.S.C. § 13(a), (2) price discrimination under the New Mexico Price Discrimination Act, N.M. Stat. Ann. § 57-14-3, (3) breach of contract, and (4) breach of the implied covenant of good faith and fair dealing. *Id.* at 15-19. Rawson contends that both the federal and state price discrimination acts apply to prohibit sellers, like Associated Materials, from directly or indirectly charging different prices among different purchasers, like Rawson and its competitors, for similar goods. *Id.* at 3. Rawson attached to its complaint the 2020/2021/2022 Distributor Partnership Agreement, an Amendment thereto, and the 2023 Distributor Partnership Agreement. [Doc. 1-1].

Associated Materials filed a motion to dismiss for failure to state a claim and a motion to transfer venue on January 31, 2025, in lieu of filing an answer [Docs. 22, 23].

### B. Memorandum Opinion and Order Denying Associated Materials' Motion to Transfer Venue [Doc. 38].

The Court denied Associated Materials' motion to transfer the matter to the District of Delaware [Doc. 22] pursuant to the forum selection clause found in the online terms and conditions which Associated Materials argued were part of the parties' distribution agreement. [Doc. 38]. The Court first considered whether the forum selection clause was properly incorporated into the distribution agreement such that it was a valid and enforceable provision. *Id.* at 7. The first step in

this analysis required determining which state's contract law applied. *Id.* at 8. The Court applied New Mexico's conflict of law rules to find that New Mexico contract law governed the underlying incorporation by reference issue. *Id.* at 8-10.

The Court then relied on a recent New Mexico Court of Appeals opinion, *Szantho v. Casa Maria of New Mexico*, LLC, No. A-1-CA-41167, 2025 WL 1621680, at *3 (N.M. Ct. App. June 5, 2025) announcing New Mexico's incorporation by reference standard. *Id.* at 10. The *Szantho* court found that two requirements must be met to effectuate valid incorporation by reference: "[f]irst, the contract must make a clear reference to the document and describe it in such terms that its identity may be ascertained beyond doubt" and "[s]econd, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.* Applying this standard, the Court found that neither element was met with respect to Associated Materials' terms and conditions outside the four corners of the distribution agreements. *Id* at 11-13. The Court explained:

> [G]eneral reference to "invoice terms and conditions" in the distribution agreements does not effectively incorporate the specific website terms and conditions into the distribution agreements. Therefore, the Court finds the forum selection clause is not properly part of the distribution agreements and declines to transfer the case to Delaware.

*Id.* at 13. The transfer analysis and holding applies to the dismissal analysis insofar as Associated Materials relies on terms and conditions not properly incorporated into the agreement in order to argue for dismissal.

## II.     LEGAL STANDARDS

Defendants may move for dismissal for part or all of a complaint for failure to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

4

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the court can reasonably infer from the complaint that the defendant is liable for the plaintiff's injuries. *Id.* Only factual allegations matter to this determination and the court must disregard assumptions, speculation, or legal conclusions within the complaint. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Twombly*, 550 U.S. at 555); *Bledsoe v. Carreno*, 53 F.4th 589, 606–07 (10th Cir. 2022). In addition, while not needing lengthy or detailed facts the plaintiff must elaborate beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. However, the court must construe the complaint and make all reasonable inferences from it in favor of the plaintiff, who must "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

### III.   ANALYSIS

Associated Materials moves the Court to dismiss with prejudice count one alleging price discrimination in violation of the federal Robinson-Patman Act, count two alleging price discrimination in violation of the New Mexico Price Discrimination Act ("NMDPA"), and count four alleging violation of the implied covenant of good faith and fair dealing, each for a failure to state a claim and futility of further amendment. [Doc. 21, at 8-17, 22]. The motion also requests the Court limit count three for breach of contract to claims "based on conduct after October 7, 2023" (one year before Rawson filed its complaint) based on a provision endorsing a one-year claims limitation period. *Id.* at 1.

**A. Rawson Plausibly Alleged A Claim For Federal Price Discrimination Under The Robinson-Patman Act.**

1. <u>Applicable Law</u>

A prima facie claim for price discrimination under the Robinson-Patman Act requires a plaintiff to plausibly allege: "(i) two or more contemporaneous sales by the same seller to different buyers at different prices; (ii) of commodities of like grade and quality; (iii) at least one of the sales was made in interstate commerce; (iv) the discrimination had the requisite effect on competition generally; and (v) the discrimination caused injury" to the plaintiff. *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 970 F. Supp. 2d 1162, 1170 (D. Colo. 2013) (citing *Volvo Trucks of North America, Inc. v. Reeder–Simco GMC, Inc.,* 546 U.S. 164, 176–77 (2006)); 15 U.S.C. § 13(a).

There does not appear to be a bright-line rule for what time frame constitutes "contemporaneous" sales. *See B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 665 (10th Cir. 2006) (collecting cases suggesting that sales made more than five months apart are not reasonably contemporaneous). The Tenth Circuit has explained that in this context, "the sales under comparison must be reasonably contemporaneous in that they must (1) have been entered into within a reasonably short time period and (2) contemplate reasonably simultaneous delivery of the goods involved in the transaction." *Black Gold, Ltd. v. Rockwool Indus., Inc.*, 729 F.2d 676, 683 (10th Cir. 1984) (citing 4 J. von Kalinowski, *Antitrust Laws and Trade Regulation* § 24.03[3] (1983)). The Ninth Circuit has similarly determined that "[t]o be subject to the [Robinson-Patman] Act, the disadvantaged recipients (or non-recipients) must be customers of the giver within approximately the same period of time as the award is made to the favored party . . . the requirement means that both enterprises must have begun operations at reasonably contemporaneous times." *Mathew Enter., Inc. v. Chrysler Grp., LLC*, 738 F. App'x 569, 570 (9th

Cir. 2018) (citing *England v. Chrysler Corp.*, 493 F.2d 269, 272 (9th Cir. 1974) (finding a sixteen-month difference too distant to be reasonably contemporaneous)).

A firm standard for the requirement that commodities be "of like grade and quality" is similarly elusive. However, ascribing the plain meaning of the term "like" when used as an adjective, the Court agrees that commodities of "*like* grade and quality" do not equal "*identical* grade and quality." *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701, 710 (8th Cir. 2004), *rev'd and remanded sub nom*, 546 U.S. 164 (2006)). Conversely, "[p]roducts are not of like grade and quality if there are substantial physical differences in products affecting consumer use, preference or marketability." *Id.* (internal quotation omitted).

2. Application.

The Court finds that the complaint states a claim for price discrimination under the Robinson-Patman Act for sales made in both New Mexico and Texas. For New Mexico sales, Associated Materials says Rawson failed to allege that Associated Materials made two contemporaneous sales (one sale to Rawson and one sale to another distributor) of windows of like grade and quality. [Doc. 21, at 9]. Rawson counters that the complaint satisfies these elements by alleging Associated Materials sold Alpine windows to distributor All Seasons while in competition with Rawson for business on the same New Mexico homebuilding projects. [Doc. 27, at 7, 8].

The Court is satisfied that Rawson has plausibly pled two contemporaneous sales by the same seller (Associated Materials) to different buyers (Rawson and All Seasons). Although Rawson does not provide exact dates for the reasonably contemporaneous requirement, the fact that Rawson and All Seasons allegedly purchased windows from Associated Materials to compete for business on the same projects indicates a reasonably short time period and reasonably simultaneous delivery of the windows. [Doc. 27 at 9]; *see Black Gold, Ltd*, 729 F.2d at 683.

Likewise, the allegation that Rawson and its competitors, like All Seasons, purchased Alpine windows from Associated Materials for the same type of projects suffices to meet the "commodities of like grade and quality"—not identical grade and quality— element. Further factual questions on these points are inappropriate to resolve at this juncture.

For Texas sales, Associated Materials alleges almost the same pleading deficiencies—lack of two sales and like commodities—but alleges lack of differing prices instead of contemporaneousness. [Doc. 21, at 11]. Rawson responds that "disparate shipping terms can [and did] constitute a price difference" and thereby discrimination. [Doc. 27, at 11] (collecting cases). Rawson also says Associated Materials' argument that Rawson did not have approved facilities in San Antonio or Austin is misplaced, as is the focus on refusal to sell windows not being actionable as price discrimination. [Doc. 27, at 11, 12].

The Court finds that Rawson has sufficiently plead federal price discrimination for Texas sales of Alpine windows based on alleged discriminatory shipping. Particularly cogent are Rawson's allegations in paragraphs 58 and 59 of the complaint that it lost business from homebuilders in San Antonio and Austin because Associated Materials shipped windows to other distributors in those locations but not to Rawson, which resulted in the other distributors offering lower prices than Rawson. [Doc. 1, at 9, 10]. "In effect," Rawson pleads, "the additional shipping costs imposed on Rawson equated to a change in the pricing structure . . . namely that the cost of windows included shipment." *Id.* at 10. This is enough to advance past the motion to dismiss stage.

**B. Rawson Plausibly Alleged A Claim For Price Discrimination Under The New Mexico Price Discrimination Act.**

Associated Materials argues that Delaware law should apply to the state price discrimination claim because the "binding contractual choice-of-law provision." [Doc. 21, at 13]. The Court rejects this argument, however, because of its prior ruling that the invoice terms and

conditions (including the choice of law provision) were not properly integrated into the contract. *See* [Doc. 38]. Therefore, the Court construes this claim under the New Mexico Price Discrimination Act. *See* N.M. Stat. Ann. § 57-14-3.

1. Applicable Law.

The NMPDA tracks the Robinson-Patman Act by prohibiting direct or indirect anticompetitive practices which "discriminate in price between different purchasers of commodities of like grade and quality." § 57-14-3. The NMDPA provides a private right of action. § 57-14-8; *see* [Doc. 21, at 13].

2. Application.

Associated Materials argues that Rawson fails to state a claim under the NMDPA where "the burden of pleading elements [is] similar to the [Robinson-Patman Act]." [Doc. 21, at 14]. Asserting Rawson pleads conclusions and elements instead of facts, Associated Materials urges the NMDPA claim necessarily fails. *Id.* Rawson's response deconstructs why the Delaware choice of law provision, which would ultimately sidestep a New Mexico private action, flies in the face of New Mexico public policy. *See* [Doc. 27, at 13-15]. Because the Court has found this choice of law provision is not part of the operative agreements, *see* [Doc. 38], it need not address this argument. The Court having concluded that Rawson states a claim under the Robinson-Patman Act, Rawson's factual allegations also sufficiently state a claim under the less onerous state law analogue. *See* [Doc. 1, at 17, 18]; § 57-14-3 (not enumerating a contemporaneous sales requirement as under the Robinson-Patman Act).

**C. Rawson Plausibly Alleged A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

1. Applicable Law.

9

"Every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Bogle v. Summit Inv. Co., LLC*, 2005-NMCA-024, ¶ 16. This means neither party may do anything to injure the rights of the other party to the benefits of the agreement. *Id.* The implied covenant's goal is to make an agreement's promises effective and it is breached "only when a party seeks to prevent the contract's performance or withhold its benefits from the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 8. However, the implied covenant "cannot be used to overcome or negate" an express contract term. *Id.* A court cannot use the implied covenant to make findings inconsistent with a written agreement, *Cont'l Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 707 (1993), nor to "override express provisions" in the terms of "an integrated, written contract." *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 731 (1988).

2. Application.

As with the federal claim, the Court declines to apply Delaware law. Associated Materials argues that Rawson's New Mexico good faith and fair dealing claim still fails because Rawson tries to unlawfully supplant express contract provisions with the implied covenant claim. [Doc. 21, at 17]. Associated Materials says the three ways it allegedly breached the implied covenant—refusing to accept orders in Austin and San Antonio, delaying product delivery, and unjustifiably increasing prices and shipping terms—are precluded by express terms or by the breach of contract claim. *Id.* at 15, 16. Rawson counters that Associated Materials "drastically overstates the language of the barebones Agreement between the parties" by stating that contractual provisions "speak directly" to the implied covenant breaches alleged. [Doc. 27, at 16]. Rawson also notes there is "no prohibition against pleading in the alternative" regarding the alleged refusal to ship giving rise to breach of contract and implied covenant claims. *Id.* at 16, 17.

10

The Court finds Rawson states a claim for breach of the implied covenant of good faith and fair dealing. Associated Materials' assertion that contract provisions preclude the alleged implied covenant breaches ignores the fundamental issue in this lawsuit—that Associated Materials' price increases and shipping delays were *discriminatory* in practice. If the Court were to adopt the logic Associated Materials advances (assuming the relevant contract provisions were validly incorporated into the agreement), it would permit parties to use contract provisions to ratify facially neutral but disparately discriminatory practices. Rawson alleges facts supporting a conclusion that Associated Materials' pricing scheme and delivery delays were unilaterally-imposed terms that cost Rawson the benefit of its agreement, fulfilling the definition of an implied covenant claim. The claim stands.

### D. The One-Year Limitations Period Is Not Validly Part Of The Agreement And Is Therefore Unenforceable.

Associated Materials argues that the agreement terms and conditions impose a one-year statute of limitation so that Rawson's October 7, 2024, complaint "may only bring claims based on conduct and purchases occurring on or after October 7, 2023." [Doc. 21, at 18]. Associated Materials contends Section 13(c) imposing the one-year limitation is a valid and enforceable part of the agreement's terms and conditions under Delaware or New Mexico law. *Id.* at 19, 20. Rawson insists that such a one-year limitations period is unenforceable because the terms and conditions were never validly incorporated into the agreement and are subject to Associated Materials' unilateral modification. *Id.* at 18-20.

The Court's prior holding that the online terms and conditions were not properly incorporated into the agreement resolves this question. *See* [Doc. 38]. The Court cannot identify any reason presented by this motion to depart from its previous incorporation-by-reference analysis. Associated Materials' argument rests on the unfounded assumption that the terms and

11

conditions are validly incorporated. Therefore, the Court declines to find Rawson's claims time-barred by virtue of the one-year limitations period Associated Materials advances.

### IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Associated Materials' Motion to Dismiss for failure to state a claim [Doc. 21] is **DENIED**.

**IT IS SO ORDERED.**

_____
Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent